No. 140.—Succession of William Arick.—Opposition to Tableau of Debts.

The filing of a tableau of debts by an administrator is an acknowledgment of their existence which interrupts prescription.

An item upon such tableau for hire of slaves, will, under the existing jurisprudence of the State, be disallowed.

Though a purchase be made by a member of a commercial firm outside of its ordinary operations, yet if it be made for the benefit of the firm and brought to the knowledge of the other partner, who does not repudiate it, but promises to pay the note given in the firm name for the price, he will be bound *in solido*.

Such a promise to pay is not a promise to pay the debt of a third person, and may be established by parol.

Where the nature of the evidence and the condition of the transcript renders it impossible to determine with accuracy the credits to which the succession is probably entitled, the court will remand the cause.

APPEAL from the Parish Court, parish of Bossier. *L. W. Baker*, Parish Judge. *Griffin & Snider* and *Richard W. Turner* for administrator, and *R. T. Stinson*, for intervenor, appellants. *T. M. Fort* and *T. T. Land*, for opponents, appellees.

Howe, J. Prior to March, 1858, A. B. Hughes, R. D. Speight and B. F. Looney were engaged in business as merchants in Bossier parish, under the firm name of A. B. Hughes & Co. On the eighth March, 1858, the deceased, William Arick, and B. F. Looney purchased the stock of goods of A. B. Hughes & Co. and gave therefor their due bill for $13,733 10 in their individual names. On the same day they formed a commercial partnership under the firm name of Arick & Looney, and proceeded to do business as merchants. On the twenty-sixth of April, 1858, B. F. Looney, on behalf of Arick & Looney, purchased from A. B. Hughes & Co. a number of accounts and debts due the latter firm, and gave therefor a due bill signed with the firm name of "Arick & Looney." It appears that Arick knew of the negotiations pending for these assets ; that the object of buying them was that the new firm might hold them so that their customers against

whom these claims existed should not be disturbed; and that although he, Arick, was not present when the last named due bill was executed, yet that he repeatedly recognized its existence, made no attempt to disavow the authority of Looney to execute it for the firm, and finally promised explicitly to pay it as a partnership debt.

William Arick died in 1861—B. F. Looney had already died in 1859. On the twenty-fifth March, 1862, the administrator of the former filed a tableau of debts, of which three items have been opposed by the attorney of absent heirs, namely: No. 26, an item of $306 50, for hire of slaves; No. 7, the due bill lastly above named for $6,779 26; and No. 8, the other due bill, placed on the tableau, with a credit, reducing its amount to $7,790 11. R. T. Stinson intervened, claiming to be owner of these due bills, and asking to be recognized as such. Josephine Frith, widow of B. F. Looney, intervened, claiming that William Arick had converted to his own use all the succession of her late husband, and that the succession of Arick was therefore indebted to her and her minor child, being in necessitous circumstances, in the sum of one thousand dollars. R. J. Looney intervened as administrator of B. F. Looney, claiming $6,003 08, on the partnership account. Pleas of prescription were filed by the attorney of absent heirs to all the debts on the tableau, of one, three, five and ten years.

*First*—It is conceded that the interventions and oppositions of Mrs. Frith and of R. J. Looney, administrator, were properly dismissed.

*Second*—The plea of prescription is untenable. We presume it is the prescription of five years, if any, that is relied on as against the due bills. But a reference to the dates above set forth shows that the tableau was filed about four years after the date of these instruments, and the litigation is still pending. Prescription was thus interrupted and the pendency of the proceedings must operate as a continuing acknowledgment of the debt.

*Third*—The item of $306 50, for hire of slaves must be disallowed under the settled jurisprudence of the State.

*Fourth*—The item No. 7, being the due bill of April 26, 1858, for $6,779 26, appears to us to be a debt justly due in full by the succession. It is opposed on the ground only of want of authority in the partner, Looney, to execute it in the firm name. It is true that the purchase for which it was given, would be, as a general rule, outside the ordinary operations of a commercial partnership, but the facts we have detailed above show that Arick was a party to the negotiation for the assets thus bought, that he did not disavow the act of his partner when brought to his knowledge, and that he ratified the act by promises to pay. The judge a quo thought, and counsel now urge, that, (under the law of 1858 providing that an agreement to pay the debt of a third person can not be established by parol), parol

evidence, in connection with the due bill itself, could not be considered. We can not assent to the correctness of this point. The parol evidence was introduced to show that, in the first place, the due bill was given for a purchase made by the partnership with the knowledge of Arick, and for the advantage of his firm; and secondly, that he promised, as commercial partner, to pay the debt. Such a promise can hardly be called a promise to pay the debt of a third person.

*Fifth*—The item No. 8, a due bill for $13,733 10, reduced by credit to $7,790 11, was properly decided to be a joint obligation, and the succession is liable for one-half only of the balance due. It is likely that it is entitled to further credits, but we find ourselves unable, from the evidence as presented and the transcript as made up, to determine with precision, what the amounts of such credits should be. Upon this item, and this alone, the cause must be remanded.

*Sixth*—It is urged that the due bills in question have been lost, and that proper steps have not been taken by Stinson, their present owner, to prove their loss and advertise them. In the first place, it is to be observed, that they were acknowledged and placed on the tableau long before their loss, by this action of the representative of the debtor, their amounts, their dates, and their validity judicially admitted; and, in the second place, it appears sufficiently from the evidence that they have been really lost from the records of the court, and have been duly advertised.

*Seventh*—It is contended that, since Looney was a partner, with an interest of one-third, in the firm of A. B. Hughes & Co., the due bills, given by Arick & Looney, as partners, and William Arick and B. F. Looney jointly, were "paid by confusion" to the extent of one-third on the day they were respectively made. We do not so understand the rules of law governing the extinguishment of obligations by confusion. The partnership of A. B. Hughes & Co. and the partnership of Arick and Looney, were each distinct from the individuals composing them.

We will render final judgment in this case so far as possible; and will remand it upon the point which the evidence leaves in obscurity.

It is therefore ordered that the judgment appealed from be avoided and reversed, except so far as it dismisses the oppositions of Josephine Frith and R. J. Looney, administrator, to which extent it is affirmed; that the item No. 26 of said tableau of debts, being the sum of $306 50 placed thereon, as due to E. J. Cook, for hire of slaves, be stricken off; that the opposition of the attorney of absent heirs to the item No. 7, be dismissed, and the said item, being a due bill for $6,779 26, now owned by R. T. Stinson, be homologated; that the remaining items of the said tableau, save No. 8, be also homologated; and that, as to the said item No. 8, being a joint obligation of the

deceased and B. F. Looney, the cause be remanded for the purpose of ascertaining what amount, if any, should be credited thereon in addi-- tion to the sum of $5,942 99, already indorsed as a credit, and to be further proceeded with according to law. It is further ordered that the appellees pay the costs of appeal.

Rehearing refused